THE HONORABLE MARY K. DIMKE

**MICHAEL E. McFARLAND, JR., #23000**
**CHRISTOPHER J. KERLEY, #16489**
Evans, Craven & Lackie, P.S.
818 W. Riverside, Suite #250, Spokane, WA 99201
P: (509) 455-5200 | F: (509) 455-3632

*Attorneys for Defendant Lincoln County.*

**IN UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF WASHINGTON**

| | |
|---|---|
| **RACHELLE MALLON,** Individually and as the Administrator of the Estate of Luke Mallon; **GEOFFREY D. SWINDLER,** Guardian Ad Litem for **RM1** Minor Child, **RM2** Minor Child,<br><br>Plaintiffs,<br><br>vs.<br><br>**LINCOLN COUNTY** and **LINCOLN COUNTY SHERIFF GABE GANTS.**<br><br>Defendant. | Cause No. **2:24-cv-00147-MKD**<br><br>**JOINT STATEMENT OF UNCONTROVERTED FACTS** |

Pursuant to L. Civ. R. 56, and the Court's February 3, 2026 Order, the Parties submit the following Joint Statement of Uncontroverted Facts.

**1.**    On August 13, 2014, Clark D. Ashworth, Ph.D., evaluated Luke Mallon for an employment screening psychological examination regarding a deputy sheriff position in the Lincoln County Sheriff's Office ("LCSO"). *Sheriff Gants Decl., Ex. A.*

**2.**    Luke Mallon started working for the Lincoln County Sheriff's Office

**JOINT STATEMENT OF UNCONTROVERTED FACTS –**
Page 1



("LCSO") as a Patrol Deputy on November 1, 2014. *Sheriff Gants Decl., Ex. B.*

3.     During all relevant times, Gabe Gants served as the elected Lincoln County Sheriff and Jesse Allen served as the appointed Undersheriff. *Sheriff Gants Decl.; Undersheriff Allen Decl.*

4.     In 2021, Deputy Mallon developed a serious infection in his spine that altered his mental status. *(Ex. B, Dr. Clark Ashworth Fitness for Duty Report dated August 27, 2023, p. 2, para. 3, Ex. Q Deposition of Dr. Clark Ashworth p. 58 lines 7-14, Ex. U Deposition of Candie Wellwood p. 19 lines 16-20).*

5.     Deputy Mallon was ultimately diagnosed as having bipolar mania and was treated with psychiatric medications. *(Ex. B, Dr. Clark Ashworth Fitness for Duty Report dated August 27, 2023, p. 2, para. 3).*

6.     In 2022, Deputy Mallon appeared to recover from his mental status challenges until December 2022. *(Id.)*

7.     On the morning of December 25, 2022, Deputy Mallon determined he needed to take himself out of service for mental health reasons, and informed LCSO Chief Criminal Deputy Cody Becker ("CD Becker") he was at a friend's house. *(Ex. C, Letter from Undersheriff Jesse Allen to Deputy Luke Mallon dated January 5, 2023, p. 1, para., 3).*

8.     On December 25, 2022, Undersheriff Allen talked with Mr. Mallon via telephone, and he requested to be put on sick leave while he could attend to his mental and physical health. *Id.*

9.     During the evening of December 25, 2022, Mr. Mallon notified LCSO

**JOINT STATEMENT OF UNCONTROVERTED FACTS –**
Page 2

1   Dispatch that he was enroute to the Lincoln County hospital ER due to anxiety
2   and the inability to sleep. *Id.* Mr. Mallon advised Undersheriff Allen that he (Mr.
3   Mallon) was under observation and receiving medical care. *Id.*
4

5   **10.**     During the late hours of December 25, 2022 or early hours of December 26,
6   2022, Mr. Mallon was released by the attending ED physician to return home. *Id.*
7

8   **11.**     On December 27, 2022 and at Mr. Mallon's request, Undersheriff Allen
9   met Mr. Mallon at his residence about securing his firearms. *Id.*
10

11   **12.**     On December 30, 2022, Undersheriff Allen received a call from a friend of
12   Deputy Mallon. The friend informed Undersheriff Allen that at Deputy Mallon's
13   request, he had secured all of Deputy Mallon's firearms and TASER and placed
14   them in a gun safe at the friend's home. *(Id., p. 2, para., 3).*
15

16   **13.** On December 29, 2022, Mr. Mallon voluntarily presented to the Deaconess
17   Hospital ER in Spokane for a psychological evaluation. *Id.*
18

19   **14.**     During the morning of December 30, 2022, Mr. Mallon walked out of the
20   Deaconess hospital ER and checked into a hotel in Spokane. *Id.*
21

22   **15.**     During the early hours of December 31, 2022, Mr. Mallon voluntarily
23   allowed Spokane Police Department ("SPD") and EMS take him from his
24   hotel in Spokane to Deaconess Hospital ER for further medical assistance and
25   observation. *Id.*
26

27   **16.**     After undergoing an MRI and CT scan, Mr. Mallon was discharged from
28   Deaconess Hospital on January 2, 2023. *Id.*
29

30   **17.**     On January 2, 2023, Mr. Mallon texted and called Undersheriff Allen to

**JOINT STATEMENT OF UNCONTROVERTED FACTS –**
Page 3

EVANS, CRAVEN
& LACKIE, P.S.
818 W. Riverside Ave., Suite #250,
Spokane, WA 99201-0910
Phone: (509) 455-5200 | Fax: (509) 455-3632

advise that he (Mr. Mallon) was in the process of scheduling appointments with his counselor and psychiatrist. *Id.*

**18.** On January 4, 2023 at Mr. Mallon's request, Mr. Mallon met with Sheriff Gabe Gants, Chief Criminal Deputy Kody Becker and Chief Civil Deputy Denise Liebing at the LCSO to discuss the status of Mr. Mallon's physical and mental health. Mr. Mallon's Teamsters representative, Joe Kuhn, attended the meeting by telephone. *Id.*

**19.** At the conclusion of the January 4, 2023 meeting, Mr. Mallon was temporarily relieved from duty, and his firearms, assigned equipment, uniforms, badges and IDs were collected from Mr. Mallon's residence by Sheriff Gants and Undersheriff Allen. *Id.*

**20.** During the January 4, 2023, meeting, Deputy Mallon informed Sheriff Gants he had OCD, ADHD, and felt he was suffering from PTSD. *(Ex. D, Statement Signed by Sheriff Gabe Gants on January 10, 2023, p. 2, para. 3).*

**21.** On January 5, 2023, Mr. Mallon was temporarily relieved of his duties as an LCSO Deputy Sheriff until a physical and/or psychological examination conducted by a qualified medical professional chosen by the LCSO to determine his fitness for duty pursuant to LCSO Policy 1032 (Fitness for Duty). *Undersheriff Allen Decl., Ex. A-B.*

**22.** On January 5, 2023, Undersheriff Allen placed Deputy Mallon on paid administrative leave and gave Deputy Mallon a copy of LCSO's Sheriff's Office Fitness for Duty Policy 1032. *(Ex. C, Letter from Undersheriff Jesse Allen to Deputy Luke Mallon dated January 5, 2023, p. 3, paras., 3-6, Ex. L Deposition of*

**JOINT STATEMENT OF UNCONTROVERTED FACTS –**
Page 4

EVANS, CRAVEN & LACKIE, P.S.
818 W. Riverside Ave., Suite #250,
Spokane, WA 99201-0910
Phone: (509) 455-5200 | Fax: (509) 455-3632

*Undersheriff Jesse Allen p. 36 line 25 through p. 38 line 20, p. 38 line 25 through p. 39 line 3, p. 42 line 10 through p. 44 line 14).*

**23.** According to LCSO Policy 1032 (Fitness for Duty), all deputies are required to be free from any physical, emotional, or mental condition which might adversely affect the exercise of peace officer powers. *Undersheriff Allen Decl., Ex. B.*

**24.** The purpose of LCSO Policy 1032 (Fitness for Duty) is to ensure that all deputies of the department remain fit for duty and able to perform their job functions. *Id.*

**25.** LCSO Policy No. 106 (Policy Manual) establishes that "[e]xcept where otherwise expressly stated, the provisions of this manual shall be considered as guidelines." *Undersheriff Allen Decl., Ex. C.*

**26.** LCSO Policy 1032 policy states, in pertinent part:

> Once an employee has been deemed fit for duty by the examining health care provider, the employee will be notified to resume his/her duties.

(Ex. E, *Lincoln County Sheriff's Office Policy 1032-Fitness for Duty,* p. 3(g)).

**27.** On January 8, 2023, Mr. Mallon was transported to a crisis house in Colville, WA, by a friend at Mr. Mallon's voluntary request. *Sheriff Gants Decl., Ex. C.*

**28.** On January 9, 2023, Mr. Mallon left the crisis house and wanted a ride home. Local mental health professionals and the Stevens County Sheriff's Office

**JOINT STATEMENT OF UNCONTROVERTED FACTS –**
Page 5



EVANS, CRAVEN & LACKIE, P.S.
818 W. Riverside Ave., Suite #250,
Spokane, WA 99201-0910
Phone: (509) 455-5200 | Fax: (509) 455-3632

retrieved Mr. Mallon. *Id.*

**29.**    In January 2023, Mr. Mallon was involuntary held at Providence Mount Carmel Hospital Evaluation and Treatment facility. *Id.*

**30.**    In January 2023 at Providence Mount Carmel Hospital Evaluation and Treatment facility, Mr. Mallon was diagnosed with "bipolar I disorder, manic, severe." *Sheriff Gants Decl., Ex. D.*

**31.**    In January 2023 at Providence Mount Carmel Hospital Evaluation and Treatment facility, Mr. Mallon was medicated with antipsychotics and mood stabilizers. *Id.*

**32.**    On August 16, 2023, Mr. Mallon's then-spouse, Rachelle Mallon, told Sheriff Gants she was intending to leave Mr. Mallon. *Sheriff Gants Decl., Ex. E.*

**33.**    On August 24, 2023, Mr. Mallon attended a fitness for duty examination conducted by Clark D. Ashworth, PhD. *Sheriff Gants Decl., Ex. D.*

**34.**    On August 27, 2023, Dr. Ashworth issued a report relating to his fitness for duty psychological examination of Mr. Mallon. Dr. Ashworth's August 27, 2023 report contains the following:

> As a result of my evaluation, it is my opinion that Deputy Mallon is not experiencing currently the psychological and emotional problems that resulted in administrative leave-he is now able to safely and effectively perform his normal essential law enforcement duties. However, I am very concerned that we do not know why he had extreme decompensation at the end of 2022; he did decompensate and may again. I am also very concerned that he is discontinuing psychiatric medications that helped him recover and may be necessary to avoid a return to the

**JOINT STATEMENT OF UNCONTROVERTED FACTS –**
Page 6

EVANS, CRAVEN
& LACKIE, P.S.
818 W. Riverside Ave., Suite #250,
Spokane, WA 99201-0910
Phone: (509) 455-5200 | Fax: (509) 455-3632

serious dysfunction of less than a year ago. There are gaps in my understanding of his status. I do not have direct information about Deputy Mallon's wife; divorce will not improve his mental status. Also, Mr. Raugust does not know of Deputy Mallon's current suicidal ideation.

Certainly, if Deputy Mallon returns to duty he will need to have a clear plan to address both current or psychotic symptoms, these most likely from an underlying mood/psychotic disorder. His discharge in January 2023 from the involuntary hold treatment included a crisis plan that could be the core of an updated plan-I note that plan includes taking medications as prescribed. Any plan will have to include continued mental health treatment, perhaps with authorization for consultation with me as I have considerable information about his past and current status.

I cannot rule out future episodes like at the end of 2022. I suspect this is much more likely without appropriate medications and in response to stressors such as divorce, thus a real risk at present. If he returns to duty you will need to work with him to monitor any symptoms as well as assembling a plan as above.

35.   Dr. Ashworth's letter also stated the following:

In 2022, Deputy Mallon appeared to recover from his mental status examination challenges until December 2022 when he again showed acute manic or psychotic symptoms. He was placed on an involuntary hold in January 2023 at the Providence Mount Carmel Hospital Evaluation and Treatment Facility with a diagnosis of bipolar I disorder, manic, severe. He was medicated with antipsychotics and mood stabilizers. There is no explanatory consensus regarding the causes of the December 2022 emergence of Deputy Mallon's severe symptoms. He has recovered from those symptoms,

**JOINT STATEMENT OF UNCONTROVERTED FACTS –**
Page 7



EVANS, CRAVEN & LACKIE, P.S.
818 W. Riverside Ave., Suite #250,
Spokane, WA 99201-0910
Phone: (509) 455-5200 | Fax: (509) 455-3632

apparently as a result of medications appropriate for serious bipolar disorder.

…

Deputy Mallon and his wife are separated and may divorce, he does have moderate suicidal ideation he attributes to marital problems and not working; he has a history of vague suicidal ideation around the divorce from his first wife in about February 2014. He denies history of suicide attempts.

*ECF No. 49-3, page ID 787 through 789.*

**36.** At the time of Dr. Ashworth's August 24, 2023 examination, Mr. Mallon had moderate anxiety, depression and suicidal ideation. *Id.*

**37.** In advance of Deputy Mallon's fitness for duty evaluation, Dr. Ashworth received numerous records from Defendants to assist him in making his fitness for duty determination, including considerable archival medical and health records. *(Ex. B, Dr. Clark Ashworth Fitness for Duty Report dated August 27, 2023, p. 2, para. 2, Ex K Deposition of Sheriff Gabe Gants p. 79 line 20 through p. 79 line 6; p. 82 lines 8 through 22, Ex. L Deposition of Undersheriff Jesse Allen p. 82 line 3 through p. 85 line 24; p. 87 line 21 through p. 89 line 10, p. 90 line 10 through p. 91 line 6, Ex. V Deposition of Taj Wilkerson, p. 48 line 2 through p. 58 line 17).*

**38.** Dr. Ashworth's fitness for duty examination of Deputy Mallon included the following tests: Weschler Adult Intelligence Scale Edition;16 Personality Factors Questionnaire; Imwald Personality Inventory; Burns Brief Mood Survey; and, Millon Clinical Multiphasic Inventory. *(Id., para., 1, Ex K Deposition of Sheriff Gabe Gants p. 15 line 21 through p. 17 line 13, Ex. Q Deposition of Dr. Clark Ashworth p. 13 lines 3-5; p. 16 line 12 through p. 19 line 6; p. 22 line 10 through*

**JOINT STATEMENT OF UNCONTROVERTED FACTS –**
Page 8



EVANS, CRAVEN & LACKIE, P.S.
818 W. Riverside Ave., Suite #250,
Spokane, WA 99201-0910
Phone: (509) 455-5200 | Fax: (509) 455-3632

*p. 23 line 7; p. 24 lines 1-17).*

**39.**  Dr. Ashworth's IME stated that Deputy Mallon had "moderate suicidal ideation," that Dr. Ashworth attributed, in part, to Deputy Mallon "not working." *(Id., p. 3, para. 1, Ex. Q Deposition of Dr. Clark Ashworth p. 42 line 1-5, Ex K Deposition of Sheriff Gabe Gants p. 118 line 7 through 119 line 13; p. 137 line 14 through p. 141 line 6, Ex L Deposition of Undersheriff Jesse Allen p. 117 line 5 through p. 118 line 16; p. 119 line 4 through p. 122 line 5.*

**40.**  On September 1, 2023, Mr. Mallon and two union representatives, Joe Kuhn and Taj Wilkerson, met with Sheriff Gants, Undersheriff Allen and Chief Becker at the LCSO. *Sheriff Gants Decl., Undersheriff Allen Decl.*

**41.**  On August 31, 2023 via telephone, Undersheriff Allen advised Mr. Mallon's union representatives that Sheriff Gants and Undersheriff Allen was going to be moving to terminate Mr. Mallon at the September 1, 2023 meeting. *Undersheriff Allen Decl., Ex's F and G.*

**42.**  Defendants admit they did not engage in the interactive process to discuss any potential accommodation for Deputy Mallon. *(Ex. J, Defendant's Response to Plaintiffs' Request for Admissions, Response No. 10, p. 5, line 14-26, Ex. K Deposition of Sheriff Gabe Gants p. 145 line 17 through p. 146 line 3).*

**43.**  At the September 1, 2023 meeting, copies of Dr. Ashworth's August 27, 2023, report and Sheriff Gants' September 1, 2023, termination letter were provided to Mr. Mallon and the two union representatives. *Sheriff Gants Decl., Ex. F.*

**44.**  On August 31, 2023, Sheriff Gants signed Deputy Mallon's "Notice of

**JOINT STATEMENT OF UNCONTROVERTED FACTS –**
Page 9



EVANS, CRAVEN & LACKIE, P.S.
818 W. Riverside Ave., Suite #250,
Spokane, WA 99201-0910
Phone: (509) 455-5200 | Fax: (509) 455-3632

Officer Separation." *(Ex. Q, Ex. L Deposition of Undersheriff Jesse Allen p. 129 line 5 through p. 134 line 16, Ex K Deposition of Sheriff Gabe Gants p. 110 line 10 through p. 111 line 3; p. 113 line 8 through p. 114 line 11; p. 115 lines 16-21).*

**45.**    At the September 1, 2023, meeting, Sheriff Gants began the meeting by informing Deputy Mallon he was terminated immediately. *(Ex. K, Deposition of Sheriff Gabe Gants, pp. 104 line 12 through p.107 line 2; Ex. P, pp. 1-2, Ex. L Deposition of Undersheriff Jesse Allen p.134 line 17 through p. 135 line 20; p. 137 line 13 through p. 143 line 1, Ex. V Deposition of Taj Wilkerson p. 66 lines 1-24).*

**46.**    After informing Deputy Mallon he was terminated, Sheriff Gants handed Deputy Mallon his termination letter dated September 1, 2023. *(Deposition of Sheriff Gabe Gants; Ex. T, Ex. K Deposition of Sheriff Gabe Gants p. 104 line 12 through p. 105 line 16, Ex. L Deposition of Undersheriff Jesse Allen p.134 line 17 through p. 135 line 20; p. 137 line 7 through p. 141 line 15).*

**47.**    Deputy Mallon was excited about the September 1, 2023, meeting as he believed the purpose of the meeting was to discuss his return to work. *(Ex. O. Deposition of Rachelle Mallon, p. 39 line 18-25; p. 40 line 1-8).*

**48.**    On September 14, 2023, the LCSO issued correspondence to Mr. Mallon's employee file. *Sheriff Gants Decl., Ex. G.* The correspondence rescinded Deputy Mallon's termination, stating Deputy Mallon still had unused FMLA-protected leave available to him at the time of his termination on September 1, 2023. *(Ex S, , Ex. L Deposition of Undersheriff Jesse Allen p.173 line 22 through p. 174 line 16, Ex. K Deposition of Sheriff Gabe Gants, p. 130 line 17 through p. 133 line 13).*

**JOINT STATEMENT OF UNCONTROVERTED FACTS –**
Page 10

**49.** On April 3, 2023, the Lincoln County Council approved Sheriff Gants' request to hire two (2) Communications/Corrections Deputies. *(Ex. H, April 3, 2023, Lincoln County Commissioners Proceedings, p. 2, paras., 9-10, Ex. K Deposition of Sheriff Gabe Gants p. 73 lines 5-19; p. 74 line 25 through p. 75 line 16, Ex. L Deposition of Undersheriff Jesse Allen p. 65 line 10 through p. 69 line 1).*

**50.** On August 7, 2023, the Lincoln County Council approved Sheriff Gants' request to hire one (1) Communications/Corrections Deputy. *(Ex. I, August 7, 2023, Lincoln County Commissioners Proceedings, p. 2, paras., 20-21, Ex. K Deposition of Sheriff Gabe Gants p. 79 line 7 through p. 80 line 4, Ex. L Deposition of Undersheriff Jesse Allen p. 93 line 19 through p. 95 line 4).*

**51.** Sheriff Gants testified at his deposition that, other than passing a fitness for duty exam, Deputy Mallon was qualified to work as a Communications/Corrections Deputy. *(Ex. K, Deposition of Sheriff Gabe Gants, p. 74 line 25 through p. 75 line 16).*

**52.** At his deposition, when asked if he considered Deputy Mallon for the position of a communication/corrections deputy, Sheriff Gants testified that he knew that that had been discussed, and the issue was that the deputies in corrections and communications still had to be fit for duty. *Declaration of Chrisopher J Kerley in Support of Defendants' Opposition to Plaintiffs' Motion for Partial Summary Judgment, **Ex. A** (Deposition of Gabe Gants, pages 74-75).* Sheriff Gants also testified that the training for patrol deputy was different from the training for a corrections/communications deputy. *Declaration of Chrisopher J. Kerley in Support of Defendants' Opposition to Plaintiffs' Motion for Partial*

**JOINT STATEMENT OF UNCONTROVERTED FACTS –** Page 11

EVANS, CRAVEN & LACKIE, P.S.
818 W. Riverside Ave., Suite #250,
Spokane, WA 99201-0910
Phone: (509) 455-5200 | Fax: (509) 455-3632

*Summary Judgment, **Ex. A** (Deposition of Gabe Gants, page 74, lines 6-16).* When asked if, absent fitness for duty, Mr. Mallon would have otherwise qualified for a communications/corrections deputy, Sheriff Gants testified that Mr. Mallon would have had to go through the corrections academy. *Declaration of Chrisopher J. Kerley in Support of Defendants' Opposition to Plaintiffs' Motion for Partial Summary Judgment, **Ex. A** (Deposition of Gabe Gants, page 74, line 25, page 75, lines 1-4).* He also testified that, assuming he was fit for duty, Mr. Mallon would have qualified as an applicant for the communication/corrections deputy position. Sheriff Gants never testified that Mr. Mallon, as of September 1, 2023, was qualified to work as a communications/corrections deputy. *Declaration of Chrisopher J. Kerley in Support of Defendants' Opposition to Plaintiffs' Motion for Partial Summary Judgment, **Ex. A** (Deposition of Gabe Gants, page 75, lines 1-11).*

**53.**    On August 31, 2023, Sheriff Gants signed a personnel order, informing Lincoln County's payroll department that Deputy Mallon would be terminated effective September 1, 2023. *(Deposition of Sheriff Gabe Gants, Ex. N, Ex K Deposition of Sheriff Gabe Gants p. 102 line 2- 24; p. 103 lines 8-17; p. 107 line 17 through p. 110 line 9; p. 115 lines 16-21, Ex. L Deposition of Undersheriff Jesse Allen p. 125 line 4 through p. 128 line 15).*

**54.**    At the September 1, 2023, meeting, after informing Deputy Mallon that he was terminated, Sheriff Gants handed Deputy Mallon Dr. Ashworth's August 24, 2023, IME report. *(Ex K. Deposition of Sheriff Gabe Gants, p. 103, lines 8-21, 104, lines 23-25; p. 105, lines 1-20, Ex. V Deposition of Taj Wilkerson p. 6 lines 9-25; p. 66 lines 15-22, Ex. L Deposition of Undersheriff Jesse Allen p.140 line 20*

**EVANS, CRAVEN & LACKIE, P.S.**
818 W. Riverside Ave., Suite #250,
Spokane, WA 99201-0910
Phone: (509) 455-5200 | Fax: (509) 455-3632

*through 143 line 2; p. 146 line 1 through p. 148 line 11).*

**55.**    Defendants aver that had Deputy Mallon or his union representative "provided valid reasons that Lincoln County should not terminated Deputy Mallon despite Dr. Ashworth's report and the information set forth in Sheriff Gants' letter, Lincoln County might have reconsidered its termination decision." *(Ex. J, Plaintiff's Request for Admissions, p. 3, Defendants Response No. 9, Ex K. Deposition of Sheriff Gabe Gants, p. 106 line 21 through p. 107 line 16).*

**56.**    Defendants admit Deputy Mallon suffered from a disability. *(Ex. J, Plaintiff's Request for Admissions, p. 5, Defendants Response No. 9).*

**57.**    Defendants admit they terminated Deputy Mallon because of his mental Disability and averred "that restoring him to his position as an LCSO deputy presented a substantial and unacceptable risk to the community." *(Ex. J, Plaintiff's Request for Admissions, p. 5, Defendants Response No. 15, Ex K. Deposition of Sheriff Gabe Gants, p. 152 line 1 through p. 155 line 1, Ex. L Deposition of Undersheriff Jesse Allen p. 159 line 6 through p. 160 line 6).*

**58.**    During his June 13, 2025, deposition, Dr. Ashworth testified that a person was not dangerous simply because they were diagnosed with Bipolar I. *(Ex. Q, Deposition of Clark Ashworth, p. 98, lines 14-18).*

**59.**    At his deposition, Dr. Ashworth testified as follows:

> Q: "I'd be correct to say that somebody that's suffering from bipolar disorder isn't necessarily dangerous to himself or others, isn't that correct?"

> A: "It could be. That could be correct, yes."

*Declaration of Chrisopher J Kerley in Support of Defendants' Opposition to*

**JOINT STATEMENT OF UNCONTROVERTED FACTS –**
Page 13

*Plaintiffs' Motion for Partial Summary Judgment,* **Ex. C** *(Deposition of Clark Ashworth, PhD page 98, lines 14-18).*

**60.**    During his October 30, 2023, deposition, when asked if someone diagnosed with bipolar disorder could work as a LCSO deputy, as long their condition did not adversely affect the exercise of their peace officer powers, Sheriff Gants testified "I don't believe that's correct." *(Ex. K Deposition of Sheriff Gabe Gants, p. 33, Lines 12-17).*

**61.**    At his deposition, Sheriff Gants, when asked if someone diagnosed with bipolar disorder could work as an LCSO deputy as long as their condition did not adversely affect the exercise of their official powers, Sheriff Gants testified , "I don't believe that's correct." The actual testimony from Sheriff Gants at his deposition was as follows:

> Q. Okay. It's correct to say that this policy doesn't preclude an officer from having an emotional or mental condition from working as a peace officer; is that correct?
>
> A. I imagine if it didn't affect their duties, yeah, that would be correct.
>
> Q. Yeah. And that's my follow-up question. So it doesn't blanketly prohibit an individual from having a mental or emotional condition; is that correct?
>
> A. Well, it says which might adversely affect, so any potential for them, it would prohibit.
>
> Q. Well, that's -- that's what I want to get to. That's my next question. But generally speaking does it -- so if you have anxiety, provided it doesn't affect your ability to exercise -- adversely affect exercise of peace officer

**JOINT STATEMENT OF UNCONTROVERTED FACTS –**
Page 14

EVANS, CRAVEN
& LACKIE, P.S.
818 W. Riverside Ave., Suite #250,
Spokane, WA 99201-0910
Phone: (509) 455-5200 | Fax: (509) 455-3632

powers, you could be an officer that has been diagnosed with anxiety; is that correct?

A. Yes, you potentially could be.

Q. Likewise, if you were an officer who was suffering from depression, as long as that depression did not adversely affect the exercise of peace officer powers, you could still be a Lincoln County Sheriff deputy, correct?

A. It would be case by case, but yes, potentially.

Q: "Yes. And same thing with bipolar, if you were bipolar, as long as having that condition did not adversely affect the exercise of peace officer powers, you could be a deputy in the Lincoln County Sheriff's Office, correct?"

A: "I don't believe that's correct."

Q: "So is-is bipolar-I didn't see in here, but is that, from your perspective, a blanket prohibition?"

A: "It's not a blanket prohibition. However, I know of no working law enforcement officer with bipolar anywhere."

Q: "Have you made a canvas of the State of Washington to determine whether or not any agency within the state employees an officer with bipolar?"

*Declaration of Chrisopher J. Kerley in Support of Defendants 'Opposition to Plaintiffs' Motion for Partial Summary Judgment, **Ex. A** (Deposition of Gabe Gants, page 33, lines 12-25, page 34, lines 1-4, lines 15-25, page 35, lines 1-4).*

**62.**    With respect to the timing of events that occurred at the September 1, 2023 meeting, at the beginning of the meeting Mr. Mallon was handed a termination

EVANS, CRAVEN & LACKIE, P.S.
818 W. Riverside Ave., Suite #250, Spokane, WA 99201-0910
Phone: (509) 455-5200 | Fax: (509) 455-3632

letter and a copy of Dr. Ashworth's August 27, 2023 report, and Mr. Mallon and his union representatives were advised that Mr. Mallon was being terminated because he was unfit for duty. Mr. Mallon and his union representatives were given time to review Dr. Ashworth's report, and Sheriff Gants advised them about the process to petition civil service to investigate and potentially file an appeal. Mr. Mallon and his union representatives were given copies of the civil service rules at their request and then they were allowed to talk in private. Mr. Mallon and his union representatives were given an opportunity to respond to both Dr. Ashworth's report and Sheriff Gants' termination letter. *ECF No. 49-3, page ID 769-770.*

**63.**    During his June 13, 2023, deposition, Dr. Ashworth testified that his concerns regarding Deputy Mallon decompensating in the future was based on the fact that Deputy Mallon was "dysfunctional" when he decompensated in 2022. *(Ex. Q, Deposition of Clark Ashworth, p. 84 lines 8-24).*

**64.**    At his deposition, Dr. Ashworth testified as follows:

> Q: "Decompensation, I'm sorry. So what exactly was the extreme decompensation that he had at the end of 2022?"
>
> A: "Various professionals described him as bipolar manic with-you know, they were talking about psychotic features. I've seen a number of statements where he was quoted, things that I've seen before, it's always remarkable when you see it, where he was asked a question, and at some time later they had to stop him because he was talking about a lot of things, but he wasn't answering the question. Very decompensated, psychotic, and, you know, the mania has to do with the energy and probably what was a pretty good feeling to him, probably."

**JOINT STATEMENT OF UNCONTROVERTED FACTS –**
Page 16

EVANS, CRAVEN & LACKIE, P.S.
818 W. Riverside Ave., Suite #250,
Spokane, WA 99201-0910
Phone: (509) 455-5200 | Fax: (509) 455-3632

Q: "And you indicated that you were, "very concerned," that we do not know why he had this extreme decompensation at the end of 2022. Why were you very concerned about that?"

A: "Because when he decompensated, he got really dysfunctional. And I think I've already made-stated an opinion that it looked to me like that was not taking the medication, that when he took medication, he was pretty clear. Every time-Well, when I saw him for this evaluation, he was taking medication, he was pretty clear. I did not see any of those kinds of symptoms. And very concerned because, of course, he had talked about suicide a little bit. And, you know, his job was very important to him and-"

Q: "And he wrote, 'He did decompensate, referring to what happened in 2022, and he may again.'"

A: "Yes."

*Declaration of Chrisopher J Kerley in Support of Defendants' Opposition to Plaintiffs' Motion for Partial Summary Judgment, **Ex. C** (Deposition of Clark Ashworth, PhD, page 83, lines 19-25, page 84, lines 1-24).*

**65.**    In the morning hours of September 2, 2023, Deputy Mallon committed suicide by shooting himself in the head at his home. *(Ex. R, Lincoln County Sheriff's Office Deputy Incident Report dated September 2, 2023, p. 3, para., 4 and p. 5, para., 2, Ex. L Deposition of Undersheriff Jesse Allen p. 159 line 6 through p. 160 line 6).*

**66.**    During his October 30, 2025, deposition, Sheriff Gants testified that there were numerous accommodations that Defendants could have provided Deputy Mallon. *(Ex. K, Deposition of Sheriff Gabe Gants, p. 146, line 10-25 p. 147, 1-*

**JOINT STATEMENT OF UNCONTROVERTED FACTS –** Page 17

EVANS, CRAVEN & LACKIE, P.S.
818 W. Riverside Ave., Suite #250,
Spokane, WA 99201-0910
Phone: (509) 455-5200 | Fax: (509) 455-3632

*22, Ex. L Deposition of Undersheriff Jesse Allen, p 46 lines 9-15; p. 48 lines 16-19).*

**67.**     Sheriff Gants testified that hypothetically the department could have provided Mallon with 15-minute breaks and could have provided allowances for Luke Mallon to undergo therapy during his shift. *Declaration of Chrisopher J Kerley in Support of Defendants' Opposition to Plaintiffs' Motion for Partial Summary Judgment,* **Ex. A** *(Deposition of Gabe Gants, page 146, lines 10-18).* Sheriff Gants also testified that the LCSO could have offered Luke Mallon "regular check-ins" to perhaps "address any concerns he might be having with regards to his mental condition and ask him how he was doing or feeling." *Declaration of Chrisopher J. Kerley in Support of Defendants' Opposition to Plaintiffs' Motion for Partial Summary Judgment,* **Ex. A** *(Deposition of Gabe Gants, page 146, lines 19-25, page 147, lines 1-2).* That was all that Sheriff Gants testified said with respect to possible accommodations, and Sheriff Gants never testified that those "accommodations" would allow Mr. Mallon to return to duty and perform all of the essential functions of his position as a patrol deputy.

**68.**     In paragraph 29 of her Statement of Material Facts Not in Dispute, Plaintiff asserts that, on August 31, 2023, Undersheriff Allen called Taj Wilkerson and informed him that Sheriff Gants had made the decision to terminate Deputy Mallon. What Jesse Allen testified to at his deposition was that, on August 31, 2023, the LCSO was going to be "moving to terminate Luke the next day." *Declaration of Chrisopher J. Kerley in Support of Defendants ' Opposition to Plaintiffs' Motion for Partial Summary Judgment,* **Ex. B** *(Deposition of Jesse Allen, page 128, lines 9-15).*

**JOINT STATEMENT OF UNCONTROVERTED FACTS –**
Page 18

**69.**    If the LCSO knew that Mr. Mallon had unused FMLA leave as of September 1, 2023, Mr. Mallon's termination would only have been postponed to a date congruent with his outstanding FMLA leave. *ECF No. 49-3, page ID 771.*

**DATED** this ID$^{th}$ day of February, 2026.

**EVANS, CRAVEN & LACKIE, P.S.**

*/s/Christopher J. Kerley*
**CHRISTOPHER J. KERLEY, #16489**
**MICHAEL E. MCFARLAND, JR. #23000**
*Attorney for Defendant Lincoln County*
818 W. Riverside Ave., Suite #250, Spokane, WA  99201
P: (509) 455-5200 | F: (509) 455-3632
E: Ckerley@ecl-law.com
E: mmcfarland@ecl-law.com

**THE LAW OFFICE OF LANCE KING,**

*/s/ Lance King*
**LANCE KING, #30473**
*Attorneys for Plaintiffs*
555 Andover Park W., Suite #201, Tukwila, WA 98188
P: (206) 375-9644 | E: lking@lancekinglaw.com

**OVIEDO LAW GROUP,**

*/s/ Ovidio Oviedo, Jr.*
**OVIDIO OVIEDO, JR,** ***pro hac vice***
401 Clovis Avenue, Suite #208, Clovis, CA 93612
P: (559) 226-6200 | F: (559) 432-5543
E: jro@oviedolawgroup.com
E: Oviedolawoffice@oviedolawgroup.com

**JOINT STATEMENT OF UNCONTROVERTED FACTS –**
Page 19



# CERTIFICATE OF SERVICE

I hereby certify that on ~~February 10, 2026~~ , I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which will send notification of such filing to the following:

**_Counsel for Plaintiffs_**
Lance King
Email:       lking@lancekinglaw.com

Ovidio Oviedo, Jr.
Email:       jro@oviedolawgroup.com
Email:       Oviedolawoffice@oviedolawgroup.com

**_Guardian Ad Litem_**
Geoffrey Swindler
Email:       gds@swindlerlaw.com


  /s/Christopher J. Kerley
**CHRISTOPHER J. KERLEY, #16489**
**MICHAEL E. MCFARLAND, JR. #23000**
*Attorney for Defendant Lincoln County*
818 W. Riverside Ave., Suite #250, Spokane, WA  99201
P: (509) 455-5200 | F: (509) 455-3632
E: Ckerley@ecl-law.com
E: mmcfarland@ecl-law.com

**JOINT STATEMENT OF UNCONTROVERTED FACTS –**
Page 20


EVANS, CRAVEN & LACKIE, P.S.
818 W. Riverside Ave., Suite #250,
Spokane, WA 99201-0910
Phone: (509) 455-5200 | Fax: (509) 455-3632