FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jun 18, 2026

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| RACHELLE MALLON, individually and as the Administrator of the Estate of Luke Mallon; RM1, a minor child; RM2, a minor child,<br><br>     Plaintiffs,<br><br>vs.<br><br>LINCOLN COUNTY and SHERIFF GABE GANTS,<br><br>     Defendants. | No. 2:24-CV-00147-MKD<br><br>ORDER GRANTING IN PART AND DENYING IN PART THE PARTIES' MOTIONS FOR SUMMARY JUDGMENT<br><br>**ECF Nos. 44, 49** |

Before the Court is Plaintiffs' Motion for Partial Summary Judgment, ECF No. 44, and Defendants' Motion for Summary Judgment, ECF No. 49. The Court held a hearing on the motions. ECF No. 82. Lance C. King and Ovidio Oviedo, Jr. appeared on behalf of Plaintiffs. Christopher J. Kerley appeared on behalf of Defendants. The Court has considered the motions and the record, heard from counsel, and is fully informed. For the reasons stated below, the Court grants in part and denies in part the motions.

## BACKGROUND

The following are the relevant undisputed facts. In November 2014, Deputy

ORDER - 1

Luke Mallon began working as a Patrol Deputy for the Lincoln County Sheriff's Office ("LCSO").  ECF No. 78 at 2.  On December 25, 2022, Deputy Mallon took himself out of service for mental health reasons.  *Id.*  At that time, Deputy Mallon requested to be put on sick leave so he could attend to his mental and physical health.  *Id.*  That evening, Deputy Mallon notified LCSO that he was enroute to the Lincoln County hospital emergency room due to anxiety and the inability to sleep.  *Id.*  Deputy Mallon was released from the hospital by December 26, 2022.

On December 29, 2022, Deputy Mallon went to the Deaconess Hospital ER for a psychological evaluation.  *Id.*  The following day, Deputy Mallon voluntarily walked out of the Deaconess Hospital ER and checked into a hotel.  *Id.*  On December 31, 2022, officers from the Spokane Police Department and EMS took Deputy Mallon from the hotel back to the emergency room for medical assistance and observation.  *Id.*  Deputy Mallon underwent an MRI and CT scan and was discharged on January 2, 2023.  *Id.*

On January 4, 2023, Deputy Mallon met with Sheriff Gabe Gants and others to discuss his physical and mental health.  *Id.* at 4.  At the meeting, Deputy Mallon stated he had OCD, ADHD, and felt like he was suffering from PTSD.  *Id.*  Deputy Mallon was temporarily relieved from duty until a "physical and/or psychological examination [was] conducted by a qualified medical professional chosen by the LCSO to determine his fitness for duty pursuant to LSCO Policy 1032."  *Id.*  The

ORDER - 2

following day, Undersheriff Allen provided Deputy Mallon with a copy of the LCSO Policy 1032 and placed Deputy Mallon on paid administrative leave. *Id.*

On January 8, 2023, Deputy Mallon was transported to a crisis house. *Id.* The following day, Deputy Mallon left the crisis house but was retrieved by local mental health professionals and the Stevens County Sheriff's Office. *Id.* That same month, Deputy Mallon was involuntarily held at Providence Mount Carmel Hospital Evaluation and Treatment Facility. *Id.* at 6. During that time, Deputy Mallon was diagnosed with bipolar I disorder, manic, severe. *Id.*

In August 2023, Deputy Mallon's spouse, Rachelle Mallon, told Sheriff Gants she was intending to leave Deputy Mallon. *Id.* That same month, Deputy Mallon attended a fitness for duty examination conducted by Dr. Ashworth. *Id.* Dr. Ashworth issued a report stating:

> As a result of my evaluation, it is my opinion that Deputy Mallon is not experiencing currently the psychological and emotional problems that resulted in administrative leave-he is now able to safely and effectively perform his normal essential law enforcement duties. However, I am very concerned that we do not know why he had extreme decompensation at the end of 2022; he did decompensate and may again. I am also very concerned that he is discontinuing psychiatric medications that helped him recover and may be necessary to avoid a return to the serious dysfunction of less than a year ago. There are gaps in my understanding of his status. I do not have direct information about Deputy Mallon's wife; divorce will not improve his mental status. Also, [Deputy Mallon's current mental health provider] does not know of Deputy Mallon's current suicidal ideation.
>
> Certainly, if Deputy Mallon returns to duty he will need to have a clear plan to address both current or psychotic symptoms, these most likely

ORDER - 3

from an underlying mood/psychotic disorder. His discharge in January 2023 from the involuntary hold treatment included a crisis plan that could be the core of an updated plan-I note that plan includes taking medications as prescribed. Any plan will have to include continued mental health treatment, perhaps with authorization for consultation with me as I have considerable information about his past and current status.

I cannot rule out future episodes like at the end of 2022. I suspect this is much more likely without appropriate medications and in response to stressors such as divorce, thus a real risk at present. If he returns to duty you will need to work with him to monitor any symptoms as well as assembling a plan as above.

*Id.* at 6.

Dr Ashworth also stated in his report:

In 2022, Deputy Mallon appeared to recover from his mental status examination challenges until December 2022 when he again showed acute manic or psychotic symptoms. He was placed on an involuntary hold in January 2023 at the Providence Mount Carmel Hospital Evaluation and Treatment Facility with a diagnosis of bipolar I disorder, manic, severe. He was medicated with antipsychotics and mood stabilizers. There is no explanatory consensus regarding the causes of the December 2022 emergence of Deputy Mallon's severe symptoms. He has recovered from those symptoms, apparently as a result of medications appropriate for serious bipolar disorder.
. . .
Deputy Mallon and his wife are separated and may divorce, he does have moderate suicidal ideation he attributes to marital problems and not working; he has a history of vague suicidal ideation around the divorce from his first wife in about February 2014. He denies history of suicide attempts.

*Id.* at 8.

On August 31, 2023, Undersheriff Allen advised Deputy Mallon's union representatives that Deputy Mallon was going to be terminated at a meeting on

ORDER - 4

September 1, 2023. *Id.* at 9. That same day, Sheriff Gants signed a personnel order, informing payroll, that Deputy Mallon would be terminated effective September 1, 2023. *Id.* At the September 1, 2023, meeting, Deputy Mallon was terminated and provided with a termination letter and a copy of Dr. Ashworth's report. *Id.* The following day, Deputy Mallon committed suicide. *Id.* at 17.

## PROCEDURAL BACKGROUND

Plaintiffs—the Estate of Luke Mallon, Deputy Mallon's wife, Rachelle Mallon, and their two minor children, R.M. 1 and R.M. 2— allege the following claims: (1) violation of Fourteenth Amendment due process rights; (2) wrongful death on behalf of the Estate of Luke Mallon; (3) wrongful death on behalf of Rachelle Mallon; (4) wrongful death on behalf of R.M. 1; (5) wrongful death on behalf of R.M. 2; (6) wrongful termination; (7) disability discrimination; and (8) outrage.

The parties filed cross-motions for summary judgment. ECF Nos. 44, 49. Plaintiffs seek summary judgment on their wrongful death, disability discrimination, and Fourteenth Amendment due process right claims. ECF No. 44. Defendant seeks summary judgment on all claims. ECF No. 49. For convenience, the Court addresses the issues by claim.

## LEGAL STANDARD

A district court must grant summary judgment "if the movant shows that

ORDER - 5

there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Barnes v. Chase Home Fin., LLC*, 934 F.3d 901, 906 (9th Cir. 2019). "A fact is 'material' only if it might affect the outcome of the case, and a dispute is 'genuine' only if a reasonable trier of fact could resolve the issue in the non-movant's favor." *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The court "must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inference in the nonmoving party's favor." *Rookaird v. BNSF Ry. Co.*, 908 F.3d 451, 459 (9th Cir. 2018).

The moving party bears the initial burden of demonstrating the basis for its motion and identifying the portions of the record and the evidence that show the absence of a genuine dispute of material fact. *Celotex*, 477 U.S. at 323. After the moving party has satisfied its burden, to survive summary judgment, the non-moving party must demonstrate with evidence on the record "specific facts" showing that there is a genuine dispute of material fact for trial. *Celotex*, 477 U.S. at 324. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient[.]" *Anderson*, 477 U.S. at 252. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate

ORDER - 6

inferences from the facts are jury functions, not those of a judge[.]" *Anderson*, 477 U.S. at 255.

## DISCUSSION

### A. Wrongful Death Claim

Both parties seek summary judgment on Plaintiffs' wrongful death claims. ECF Nos. 44 at 5-12; 49 at 22-28.  Plaintiffs bring wrongful death claims on behalf of the Estate, Rachelle Mallon, R.M. 1, and R.M. 2, alleging "Defendants' negligent, outrageous, and wrongful conduct was a proximate cause" of Deputy Mallon's death.  ECF No. 26 at 9.  Plaintiffs contend they are entitled to summary judgment on their wrongful death claims because "Defendants' negligence was the proximate cause of Deputy Mallon's death by suicide" as a matter of law.  ECF No. 44 at 5.  Defendants cross-move for summary judgment, contending Lincoln County owed no duty to prevent Deputy Mallon's suicide.  ECF No. 49 at 22.

Washington State's wrongful death statute states in relevant part:

> When the death of a person is caused by the wrongful act, neglect, or default of another person, his or her personal representative may maintain an action against the person causing the death for the economic and noneconomic damages sustained by the beneficiaries listed in RCW 4.20.020 as a result of the decedent's death, in such amount as determined by a trier of fact to be just under all circumstances of the case.

RCW 4.20.010.  To prevail on a negligence claim, Plaintiffs must show: "(1) the existence of a duty owed to the complaining party; (2) a breach of that duty; (3) a

ORDER - 7

resulting injury; and (4) that the claimed breach was the proximate cause of the injury." *Folsom v. Burger King*, 958 P.2d 301, 308 (Wash. 1998). The parties dispute the elements of duty and proximate cause. The Court considers each element below.

### 1. Duty

Defendants argue that "there is no duty to protect another from self-harm including suicide, absent the existence of a special protective relationship or relationship of entrustment." ECF Nos. 49 at 23, 61 at 11. Plaintiffs argue that Defendants had a duty of care from causing any foreseeable harm to Deputy Mallon. ECF No. 44 at 6-7. Plaintiffs assert not only was Deputy Mallon's suicide foreseeable, but also Defendants breached their duty of care by failing to provide him with due process rights prior to termination, discriminating against him based on a disability, and failing to engage with him in the interactive process. *Id.*

"[N]o duty exists to avoid acts or omissions that lead another person to commit suicide unless those acts or omissions directly or indirectly deprive that person of the command of their faculties or the control of their conduct." *Webstad v. Sortini*, 924 P.2d 940, 945 (Wash. App. 1996). But "[a]ctors have a duty to exercise reasonable care to avoid the foreseeable consequences of their acts." *Washburn v. City of Federal Way*, 310 P.3d 1275, 1288 (Wash. 2013).

ORDER - 8

"Foreseeability can be a question of whether duty exists and a question of whether the harm is within the scope of the duty owed." *Scott v. Amazon.com, Inc.*, 583 P.3d 1155, 1162 (Wash. 2026). "In the latter sense, it is a question of fact for the jury." *Id.*

Plaintiffs argue that Defendants were aware of Deputy Mallon's suicidal ideations due to Dr. Ashworth's report and that these ideations were attributable to Deputy Mallon not working. ECF No. 44 at 7. In his report, Dr. Ashworth stated "[Deputy Mallon] does have moderate suicidal ideation he attributes to marital problems and not working; he has a history of vague suicidal ideation around the divorce from his first wife in about February 2014. He denies history of suicide attempts." ECF No. 78 at 8. Plaintiffs assert Deputy Mallon's suicide, based on Dr. Ashworth's report, was foreseeable to Defendants. ECF No. 44 at 7. Further, Plaintiffs argue Defendants' actions caused an irresistible impulse leading Deputy Mallon to commit suicide. Defendants maintain that because no special relationship existed between Defendants and Deputy Mallon that Defendants did not have a duty to protect Deputy Mallon from self-harm. ECF No. 61 at 12.

There are genuine disputes of material fact regarding foreseeability and whether Defendants' actions "or omissions directly or indirectly [deprived Deputy Mallon] of the command of [his] faculties or the control of [his] conduct." *Scott*, 583 P.3d at 1161.

ORDER - 9

*2. Proximate Cause*

Plaintiffs argue that Defendants' "unlawful termination was the proximate cause of Deputy Mallon's suicide." ECF No. 44 at 8. Defendants argue that Plaintiffs cannot show what truly caused the irresistible impulse for Deputy Mallon to commit suicide. ECF No. 61 at 14.

"Proximate cause is generally a fact question for the jury, but if reasonable minds could not differ, these factual questions may be determined as a matter of law." *Meyers v. Ferndale School Dist.*, 481 P.3d 1084, 1089 (Wash. 2021).

Plaintiffs rely on *Orcutt v. Spokane County*, to argue that "the Washington State Supreme Court held that if the defendant's negligent conduct brings about the irresistible impulse that causes a person to commit suicide, the defendant is legally liable for that person's wrongful death." ECF No. 44 at 5. In *Orcutt*, a woman committed suicide after sustaining injuries in a car accident on a washed-out Spokane County road. 364 P.2d 1102, 1103 (Wash. 1961). Her estate brought an action against Spokane County alleging "the injuries and pain and suffering caused the decedent to become seized by an uncontrollable impulse to take her own life." *Id.* The Supreme Court of Washington held "there was [sufficient] evidence to raise a jury question as to whether the decedent's suicide was caused by any wrongful act, neglect or default of the defendant." *Id.* The Supreme Court of

ORDER - 10

Washington concluded that the expert medical testimony offered by Plaintiff constituted "substantive evidence in the record that the decedent's death was the result of an uncontrollable impulse, which was caused by the injuries in the accident." *Id.* at 1107.

Plaintiffs intend to offer expert medical testimony that Deputy Mallon "was so overwhelmed by his unexpected termination that he could not resist or control the impulse to kill himself." ECF No. 44-16 at 5. However, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge[.]" *Anderson*, 477 U.S. at 255. When viewing the facts in the light most reasonable to the nonmoving party, the Court determines reasonable minds could differ on the issue of proximate cause, and in this case, it is a question for the jury.

Accordingly, the Court denies the parties' motions for summary judgment on the wrongful death claims.

**B. Washington Law Against Discrimination ("WLAD") Claim**

Both parties seek summary judgment on Plaintiffs' WLAD claim. ECF Nos. 44 at 12-28; 49 at 28-33.

"To establish a prima facie case of disability discrimination under the WLAD, [a plaintiff] must show that (1) []he was disabled, (2) []he was performing [his] job satisfactorily, and (3) []he suffered an adverse employment

ORDER - 11

action." *Bultena v. Washington State Dep't of Agric.*, 319 F.Supp.3d 1215, 1222 (E.D. Wash. 2018) (citing *Mikkelsen v. Pub. Util. Dist. No. 1 of Kittitas Cty.*, 404 P.3d 464, 473 n.3 (Wash. 2017)).  "Summary judgment for an employer is seldom appropriate in employment discrimination cases because of the difficulty of proving discriminatory motivation." *Mikkelsen*, 404 P.3d at 471 (citation omitted). "To overcome summary judgment, the plaintiff needs to show only that a reasonable jury could find that discrimination was a substantial factor in the employer's adverse employment action." *Id.* (citing *Mackay v. Acorn Custom Cabinetry, Inc.,* 898 P.2d 284, 288 (Wash. 1995)).

 *1. Termination Due to Disability*

Plaintiffs argue that Defendants violated the WLAD by terminating Deputy Mallon because of his disability.  ECF No. 44 at 13.  Defendants argue that "Mr. Mallon was not capable of performing the essential functions of a patrol deputy and there was no available reasonable accommodation that would allow him to do so."  ECF No. 61 at 16.  Further, Defendants assert that "Mr. Mallon was not fit for duty as a law enforcement officer in light of the serious concerns documented in Dr. Ashworth's" report and "Lincoln County had no way to monitor Mr. Mallon's medicine regimen and ongoing mental health treatment."  ECF No. 49 at 30.

Plaintiffs analogize this case to *Hoey v. County of Nassau*, 2014 WL 4656223 (E.D.N.Y. Sept. 12, 2014), arguing that the facts are nearly identical.

ORDER - 12

ECF No. 44 at 22. There, a Nassau County police officer was placed on leave after having a mental breakdown. Uncontradicted medical evaluations found the officer capable of returning to duty, but the officer was found not qualified by the police commissioner. The officer sued the County and on summary judgment the court found "defendants' suggestion that the plaintiff was not qualified under the ADA based on this record simply fails." *Hoey*, 2014 WL 4656223, at *6. Here, by contrast, Dr. Ashworth's report indicated significant concerns about Deputy Mallon, as recounted above.

Defendants argue that reinstating Deputy Mallon posed a direct threat considering the concerns Dr. Ashworth outlined in his report. ECF No. 49 at 30. "The term 'direct threat' is defined as a 'significant risk to the health or safety of others that cannot be eliminated by reasonable accommodation." *Kries v. WA-SPOK Primary Care, LLC*, 362 P.3d 974, 993 (Wash. App. 2015). "The factors to consider in determining whether an individual poses a direct threat are: (1) the duration of the risk, (2) the nature and severity of the potential harm, (3) the likelihood that the potential harm will occur, and (4) the imminence of the potential harm." *Id.*

Defendants assert the concerns outlined in Dr. Ashworth's report support that Deputy Mallon posed a significant risk. ECF No. 49 at 33. Plaintiffs disagree because Dr. Ashworth also opined that Deputy Mallon was fit for duty at that point

ORDER - 13

in time.  ECF No. 63 at 13.  The Court concludes there is a genuine issue of material fact as to whether Deputy Mallon was terminated purely due to his disability or if he posed a direct threat.

*2. Interactive Process*

Plaintiffs argue that "Defendants violated the WLAD by failing to engage in the interactive process with Deputy Mallon to see if there were any reasonable accommodations that could assist Deputy Mallon in his continued employment with LCSO."  ECF No. 44 at 23.  Defendants assert that "there was no open alternate position at Lincoln County that Mr. Mallon was fit for and qualified to perform."  ECF No. 61 at 23.

"An employer must reasonably accommodate an employee's disability unless the employer can show that such accommodation would place an undue hardship on the employer's business."  *Griffith v. Boise Cascade, Inc.*, 45 P.3d 589, 593 (Wash. App. 2002).  "An employer need not remove or modify the essential functions of a position to accommodate an employee."  *Id.* at 594.  "An employer need only show that an accommodation imposed an undue burden if it makes no accommodation."  *Id.*

Plaintiffs point to Sheriff Gant's deposition to show that there were alternative positions available and Deputy Mallon was qualified to fill them.  ECF No. 44 at 25.  In contrast, Defendants point to Sheriff Gant's deposition testimony

ORDER - 14

to show that Deputy Mallon still needed to be fit for duty and would have had to go through a corrections officer academy to be qualified for the position.  ECF No. 61 at 24.  At his deposition Sheriff Gant's testified to the following:

> **Q:** At any time did you consider Deputy Mallon for the position of a communications/corrections deputy?
>
> **A:** I know this was discussed. I don't recall having an open position at the time. And the issue was that deputies in corrections and communications division still have to be fit for duty.
>
> **Q:** It is the same fitness for duty that a patrol officer –
>
> **A:** Yes.
>
> . . .
>
> **Q:** Absent the fitness for duty, your understanding of Luke Mallon's qualifications, would he have otherwise qualified for a communications/corrections deputy?
>
> **A:** He would have had to go through an academy to meet those qualifications.
>
> **Q:** Correct. I'm just asking as an applicant, if – assuming he was fit for duty and he was – applied for such a position, communications and –
>
> **A:** Yes.

ECF No. 44-13 at 12.

The deposition testimony and the parties' arguments show there is a genuine dispute of material fact as to whether there was an alternate position that Deputy Mallon was fit for and qualified to perform.  ECF Nos. 44 at 25; 61 at 23. Likewise, there is a genuine issue of material fact as to whether accommodating

ORDER - 15

Deputy Mallon would have imposed an undue burden on LCSO.  Accordingly, the Court denies the parties' motions for summary judgment regarding the WLAD claim.

**C. Due Process**

Both Plaintiffs and Defendants move for summary judgment on Plaintiffs' due process claim.  ECF Nos. 44 at 28; 49 at 10.  Plaintiffs argue that the "undisputed facts show that Defendants failed to provide Deputy Mallon with his constitutionally guaranteed pre-termination due process rights of notice and opportunity to be heard prior to terminating him."  ECF No. 44 at 28.  Specifically, Plaintiffs argue that Deputy Mallon "did not receive notice Sheriff Gants was considering terminating him and was not provided the evidence Sheriff Gants used in making his decision, prior to his termination" and that "Deputy Mallon was not given a meaningful opportunity to respond prior to Sheriff Gants making the final decision to terminate him."  ECF No. 44 at 30-34.

Defendants argue that Deputy Mallon received adequate procedural due process.  ECF No. 49 at 11.  Defendants assert that Deputy Mallon's union representative was informed prior to the meeting that the subject of the meeting was termination, that Deputy Mallon and his union representatives were given an opportunity to respond at the meeting, and that the termination did not go into effect until after the meeting.  *Id.*

ORDER - 16

A procedural due process claim has two elements: "whether there exists a liberty or property interest which has been interfered with by the State" and "whether the procedures attendant upon that deprivation were constitutionally sufficient." *Vasquez v. Rackauckas*, 734 F.3d 1025, 1042 (9th Cir. 2013) (citation and quotations omitted). "[T]he Due Process Clause provides that certain substantive rights – life, liberty, and property – cannot be deprived except pursuant to constitutionally adequate procedures." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985). "The essential requirements of due process . . . are notice and an opportunity to respond." *Id.* "The opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental due process requirement." *Id.* "The tenured public employee is entitled to oral or written notice of the charges against him, and explanation of the employer's evidence, and an opportunity to present his side of the story." *Id.*

The undisputed facts are that on August 31, 2023, Deputy Mallon's union representatives were informed via telephone that Sheriff Gants and Undersheriff Allen were going to be moving to terminate him at a meeting the following day. ECF No. 78 at 9. On that same day, Sheriff Gants signed Deputy Mallon's "Notice of Officer Separation" and signed a personnel order, informing payroll, that Deputy Mallon would be terminated the following day. *Id.* at 12. At the meeting on September 1, 2023, Deputy Mallon was terminated, and copies of Dr.

ORDER - 17

Ashworth's report and Sheriff Gants' termination letter were provided to Deputy Mallon and his union representatives. *Id.*

Plaintiffs argue that this process failed to provide Deputy Mallon "with his constitutionally guaranteed pre-termination due process rights of notice and opportunity to be heard prior to terminating him." ECF No. 44 at 28. Defendants argue that his process was sufficient because it gave advance notice of Deputy Mallon's pending termination to his union representatives, Deputy Mallon and his union representatives were given an opportunity to respond at the meeting, and the termination did not go into effect until after the meeting. ECF No. 49 at 12-13.

A reasonable trier of fact could find that LCSO failed to provide Deputy Mallon with his pre-termination rights. *See Matthew v. Harney County, Or., School Dist. No. 4*, 819 F.2d 889, 894 (9th Cir. 1987) (reversing a grant of summary judgment where a reasonable trier of fact could find that the Plaintiff was not provided with her pre-termination rights and concluding that "sufficient factual questions required the district court to try the property interest claim."). Accordingly, the Court denies the parties' motions for summary judgment on Plaintiffs' due process claim.

**D. Qualified Immunity**

Defendants argue that Sheriff Gants is entitled to federal and state qualified immunity because Deputy Mallon was provided adequate due process as required

ORDER - 18

by *Loudermill*.  ECF No. 49 at 10.

### 1. Federal Qualified Immunity

Qualified immunity protects governmental officials from suit unless "(1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time.'"  *District of Columbia v. Wesby*, 583 U.S. 48, 62-63 (2018) (quoting *Riechle v. Howards*, 566 U.S. 658, 664 (2012)).  "To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right."  *O'Doan v. Sanford*, 991 F.3d 1027, 1036 (9th Cir. 2021) (citation and quotation marks omitted).  "In other words, existing precedent must have placed the statutory or constitutional question beyond debate."  *Id.*

The first prong of the analysis considers whether Defendants violated a federal statutory or constitutional right.  As discussed above, the Court cannot conclude on summary judgment that Defendants provided Deputy Mallon with an adequate pre-termination process.  Therefore, the first prong does not support qualified immunity.

The second prong of the analysis considers whether "the unlawfulness of [Defendants'] conduct was clearly established at the time."  *Wesby*, 583 U.S. at 62-63.  Defendants argue that "what exactly constituted a *Loudermill* hearing was not clearly established on September 1, 2023."  ECF No. 49 at 15.  Defendants point to

ORDER - 19

*Shewbert v. Rosand*, 2015 WL 4577705 (W.D. Wash. July 28, 2015) to support their assertion.  But in *Shewbert*, prior to termination, Plaintiff's and Defendant's attorneys met to discuss deficiencies, had substantial communication regarding the deficiencies, and the court concluded "[t]he extensive correspondences between Plaintiff and Defendant make plain that Plaintiff was given multiple opportunities to be heard in response to allegations by Defendant.  Although Plaintiff disagreed with Defendant's reasoning along the way, Defendant directly considered Plaintiff's responses." 2015 WL 457705, at *7.  In this case, there was no extensive correspondence concerning Deputy Mallon's termination.  Deputy Mallon's union representatives were informed of his termination the day before the termination meeting and Deputy Mallon's opportunity to be heard was at the termination meeting.

On September 1, 2023, it was clearly established by *Loudermill* that "public [employees are] entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." 470 U.S. at 546.  Accordingly, Defendants' motion for summary judgment on the Section 1983 claim is denied because there is a genuine dispute of material fact as to whether Deputy Mallon was provided adequate pre-termination due process rights and these pre-termination due process rights were clearly established rights at the time of Deputy Mallon's termination.

ORDER - 20

*2. State Qualified Immunity*

Defendants also argue that Sheriff Gants is entitled to qualified immunity under state law.  ECF No. 49 at 20.  Under Washington State law, "[i]n a negligence action, an officer is entitled to qualified immunity when he or she (1) was carrying out a statutory duty, (2) according to procedures dictated to him by statute and superiors, and (3) acted reasonably."  *Watness v. City of Seattle*, 481 P.3d 570, 581 (Wash. 2021).  The first factor "presents a question of law, while the second and third factors necessarily introduce a factual inquiry into the qualified immunity analysis under state law."  *Id.*

Defendants argue that Sheriff Gants' actions satisfy all three prongs of the state qualified immunity test because (1) Sheriff Gants acted pursuant to his duties and obligations as county Sheriff; (2) Sheriff Gants acted pursuant to specific fitness for duty policy; and (3) Sheriff Gants acted reasonably.  ECF No. 49 at 21.  However, as discussed above, there are genuine issues of material fact as to whether Sheriff Gants acted reasonably when not accommodating and deciding to terminate Deputy Mallon.  Accordingly, the Court denies Defendants' motion for summary judgment regarding state qualified immunity.

**E.  *Monell* Liability**

Defendants move for summary judgment arguing that Lincoln County is not subject to *Monell* liability.  ECF No. 49 at 16.  "To establish municipal liability

ORDER - 21

under *Monell*, [Plaintiff] must prove that (1) he was deprived of a constitutional right; (2) the municipality had a policy; (3) the policy amounted to deliberate indifference to [Plaintiff's] constitutional right; and (4) the policy was the moving force behind the constitutional violation." *Lockett v. Cnty. of Los Angeles*, 977 F.3d 737, 741 (9th Cir. 2020). "[M]unicipal liability under § 1983 attaches where – and only where – a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986).

Plaintiffs argue that "Monell liability attaches because Defendant Gants is admittedly a final decision maker for Lincoln County Sheriff's Office." ECF No. 63 at 18. Defendants agree that *Monell* liability "can exist if a single unconstitutional decision is made by an official policymaker." ECF No. 69 at 3. But Defendants argue "the process employed by Sheriff Gants and the LCSO in connection with Mr. Mallon's termination did not violate his constitutional rights." ECF No. 69 at 3.

As discussed above, the existence of genuine issues of material fact preclude the Court from determining that Deputy Mallon's constitutional rights were not violated. Therefore, Defendants' motion for summary judgment on the *Monell* claim is denied.

ORDER - 22

**F. Outrage**

Defendants argue Plaintiffs outrage claim should be dismissed because Plaintiffs were not present for any alleged outrageous acts.  ECF No. 49 at 34.

"To establish a tort of outrage claim, a plaintiff must show (1) extreme and outrageous conduct, (2) intentional or reckless infliction of emotional distress, and (3) severe emotional distress on the part of the plaintiff." *Reid v. Pierce County*, 961 P.2d 333, 337 (Wash. 1998).  The conduct must go "beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Grimsby v. Samson*, 530 P.2d 291, 295 (Wash. 1975) (citation omitted).  "[T]he plaintiff must be an immediate family member of the person who is the object of the defendant's actions, and he must be present at the time of such conduct." *Reid*, 961 P.2d at 337.  Although the question of whether conduct is sufficiently outrageous to meet this standard is usually for the jury, the trial court may grant summary judgment on an outrage claim if it finds that reasonable minds could not differ as to whether the conduct "was sufficiently extreme to result in liability." *Diacomes v. State*, 782 P.2d 1002, 1013 (Wash. 1989).

Plaintiffs do not provide an argument against and do not dispute whether summary judgment should be granted for Defendants on Plaintiffs' outrage claim.  There is no indication from the record that Plaintiffs were present at the time of the

ORDER - 23

conduct in this case.  Therefore, Defendants' motion for summary judgment on Plaintiffs' outrage claim is granted.

Accordingly, **IT IS ORDERED:**

1.  Plaintiffs' Motion for Partial Summary Judgment, **ECF No. 44**, is **DENIED**.

2.  Defendant Lincoln County's and Sheriff Gant's Motion for Summary Judgment, **ECF No. 49**, is **GRANTED in part** as to the outrage claim and **DENIED** as to all other claims.

**IT IS SO ORDERED.**  The District Court Executive is directed to file this order and provide copies to counsel.

DATED June 18, 2026.

*s/Mary K. Dimke*
MARY K. DIMKE
UNITED STATES DISTRICT JUDGE

ORDER - 24